UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DEMETRIUS ALEXANDER BROWN, ) | Civil Action No.: 4:14-cv-4191-TMC-TER |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| -vs- ) | |
| ) | |
| ) | |
| DIR. SIMON MAJOR, MAJ. McGHANEY, ) | |
| CAPT. THERESA RAY-LEE, CAPT. ) | |
| GILLIARD, LT. C. KELLY, LT. ) | |
| McMILLAN, SGT. SWEAT, SGT. ) | |
| REDDICK, SGT. CUSANDRA WILSON, ) | |
| CPL. T. MOORE, OFC. L. McFADDEN, ) | |
| OFC. B. PATTON, OFC. G. DILLARD, ) | |
| OFC. MEREWEATHER, OFC. OAKS, ) | |
| OFC. STREETER and OFC. VAUGHN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**I.      INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging various constitutional rights violations. Presently before the court is Defendants' Motion for Summary Judgment (Document # 70). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the motion for summary judgment could result in the motion being granted, resulting in dismissal of his claims. Plaintiff has not filed a response to Defendants' motion. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This Report and Recommendation is entered for review by the district judge.

**II.     RULE 41(B)**

"The Federal Rules of Civil Procedure recognize that courts must have the authority to

control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders. Fed.R.Civ.P. 41(b)." Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir.1989). "Federal courts possess an inherent authority to dismiss cases with prejudice sua sponte." Gantt v. Maryland Division of Correction, 894 F.Supp. 226, 229 (D.Md. 1995) (citing Link v. Wabash R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); White v. Raymark Industs., Inc., 783 F.2d 1175 (4th Cir.1986); Zaczek v. Fauquier County, Va., 764 F.Supp. 1071, 1074 (E.D.Va.1991)).

The Fourth Circuit, in Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978), recognizing that dismissal with prejudice is a harsh sanction which should not be invoked lightly, set forth four considerations in determining whether Rule 41(b) dismissal is appropriate: (1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal. Id. at 70.

Subsequently, however, the Fourth Circuit noted that "the four factors ... are not a rigid four-pronged test." Ballard, 882 F.2d at 95. "Here, we think the Magistrate's explicit warning that a recommendation of dismissal would result from failure to obey his order is a critical fact that distinguishes this case from those cited by appellant. . . . In view of the warning, the district court had little alternative to dismissal. Any other course would have placed the credibility of the court in doubt and invited abuse." Id. at 95-96.

In the present case, Plaintiff is proceeding pro se and, thus, is entirely responsible for his actions. It is solely through Plaintiff's neglect, and not that of an attorney, that no response has been filed. Plaintiff was specifically warned that a failure to respond to the motion for summary judgment could result in the motion being granted, thereby ending his case. In addition to failing to respond

-2-

to the motion for summary judgment, on June 30, 2015, the undersigned entered an order granting Plaintiff's motion for issuance of subpoena, directed the clerk's office to provide Plaintiff with a blank subpoena form and directed Plaintiff to complete the form and return it to the court within ten days for review. The Plaintiff has not returned the subpoena form. Because Plaintiff failed to complete and return the subpoena form he initially requested and failed to file a response to the motion for summary judgment, the undersigned concludes Plaintiff has abandoned his claim. No other reasonable sanctions are available. Accordingly, it is recommended that this case be dismissed pursuant to Fed.R.Civ.P. 41(b).

### III.     MOTION FOR SUMMARY JUDGMENT

####      A.     Plaintiff's Allegations

In the alternative, summary judgment is proper on the merits of Defendants' motion. Plaintiff was a pretrial detainee at the Sumter-Lee Regional Detention Center (SLRDC) beginning May 22, 2014, until his release on April 9, 2015. Lee Aff. ¶ 26 (Ex. to Defendants' Motion). Plaintiff alleges that Defendants violated his constitutional rights by (1) not allowing him a Kosher diet, the opportunity to pray in common areas, or a Quran as necessary for his religious beliefs, although inmates of other faiths were allowed to pray in common areas and copies of their holy texts, (2) not allowing him access to adequate legal books or sufficient legal materials, (3) Officer Patton making sexually inappropriate comments to him in front of other inmates, (4) moving him to the Special Management Unit (SMU) after he complained about Officer Patton's comments, (5) allowing him only thirty minutes of recreational time instead of one hour like the other inmates in SMU, (6) forbidding him access to his prescribed glasses because they had metal frames, although other inmates had reading glasses with metal frames, and (7) serving him apples, applesauce or cheese even though he informed the medical staff during intake that he was allergic to dairy products and apples. Plaintiff alleges violations of his First, Eighth and Fourteenth Amendment rights.

**B.     Standard of Review**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v.

Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

    **C.    Discussion**

        **1.    First Amendment**

The Free Exercise Clause of the First Amendment applies to the states by virtue of the Fourteenth Amendment. See Employment Division v. Smith, 494 U.S. 872, 876–77, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). It provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. Amend. I. It is well established that inmates retain their federal constitutional right to religious freedom pursuant to their First Amendment rights. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). While noting the Supreme Court's recognition in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979), that pretrial detainees retain constitutional protections despite their confinement, the Fourth Circuit stated that "[a] detainee's First Amendment rights may be restricted in the interest of prison security." Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993). Although Turner v. Safely, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987), involved prisoners and not pretrial detainees, the Fourth Circuit concluded that Turner provided the appropriate "standard to determine the constitutionality of the Detention Center's restrictions" on a pre-trial detainee. Hause, 993 F.2d at 1082. In Turner, the Supreme Court applied what amounts to a four-part test. First, a court must determine if there is a valid rational connection between the complained-of regulation and the legitimate governmental interest put forth to justify it. When a regulation restricts an inmate's First Amendment rights it must be neutral, meaning that the regulation furthers an important or substantial government interest unrelated to the suppression of expression. Thornburgh, 490 U.S. at 415. If the court determines that a valid rational connection exists, then it must consider three other factors in determining whether the regulation is reasonable. These three factors are: (1) whether inmates retain alternative means of exercising their First Amendment rights; (2) the burden

on prison resources that would be imposed by accommodating the right; and, (3) whether there are alternatives to the regulation that can accommodate the right at de minimis cost to valid penological interests. Turner, 482 U.S. at 89-91. The last three elements are properly understood as a means to determine whether the challenged regulation is reasonably related to the asserted interest. Hause, 993 F.2d at 1082.

With the respect to the special diet requested by Plaintiff, the record reveals that SLRDC does not provide any specific religious diets, but provides a pork-free menu in order to accommodate a variety of dietary requests. Major Aff. ¶ 9, McGhaney Aff. ¶ 32, Ray-Lee Aff. ¶ 9, Gailliard Aff. ¶ 5.[1]  As Captain Gailliard attests, providing special diets compliant with multiple religious precepts would impose a significant expense on SLRDC.  Gailliard Aff. ¶ 5. Special diets are expensive to provide, increase the costs associated with feeding the entire institutional population, create significant administrative burdens in ensuring inmates are matched to the appropriate diet, and could lead to perceptions of favoritism between religious groups based on unequal offerings. Id. Director Major notes that it would be extremely expensive to even attempt to provide religious diets for every inmate who claims he can only eat certain things on the basis of his religion. Major Aff. ¶ 9.

In Baumgarten v. Howard Cnty. Dep't of Corr., C/A No. JFM-13-1493, 2015 WL 857974, at *6 (D. Md. Feb. 25, 2015), the court found that a detention center's pork-free menu (and failure to accommodate a variety of religious dietary practices) did not give rise to a constitutional claim. "The difficulties experienced, including additional costs and creation of perceived favoritism

---

[1] Because Plaintiff failed to file a response to the motion for summary judgment, the facts as set forth in the affidavits and other exhibits submitted by Defendants have not been challenged by Plaintiff.  To show a genuine dispute of fact, Plaintiff must present evidence supporting his position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A).

between religious groups, are legitimate compelling interests that override the minimum burden placed on plaintiff's ability to follow a Kosher diet." Id. Furthermore, in an unpublished decision, the Fourth Circuit Court of Appeals applied the Turner factors and likewise found that a detention center's refusal to provide the plaintiff with kosher meals was reasonably related to promoting legitimate penological interests. Cooper v. Lanham, 145 F.3d 1323 (4th Cir. 1998) (Unpublished Disposition). Plaintiff fails to create an issue of fact with respect to this issue and, thus, summary judgment is appropriate.

Plaintiff also alleges generally that he was not allowed to pray in common areas. The record reveals only one specific instance when Plaintiff was instructed to pray inside his cell on an occasion when he was discovered praying in front of a fire exit. Dillard Aff. ¶ 4, McGhaney Aff, ¶ 7. As Captain Gailliard attests, this policy exists to prevent the obstruction of movement of inmates throughout the facility, and to reduce the opportunity for conflict between inmates on the basis of religious differences. Gailliard Aff. ¶ 14. In the experience of SLRDC's managers, when inmates convene or congregate in the hallways, lobbies, or other common areas, it inhibits the flow of traffic throughout those areas, poses a danger to the safety and security of the institution, and can cause a disruption to the activities in the pod. Galliard Aff. ¶ 14, Major Aff. ¶ 8. Additionally, standing or kneeling to pray can draw attention to an inmate, which can cause a disruption to the activities in the pod. Galliard Aff. ¶ 14, Major Aff. ¶ 8.

However, Plaintiff is able to pray inside his cell, McGhaney Aff. ¶¶ 3, 11, Major Aff. ¶ 8, is permitted to have outside volunteers conduct ministerial visits with him, Gailliard Aff. ¶ 12, is permitted to keep and use a prayer rug, Ray Lee Aff. ¶ 20, and is able to participate in religious services when these are led by volunteers approved by security, McGhaney Aff. ¶ 9.

The Plaintiff in Mahaffey v. Major, C/A No. 3:07-793-SB, 2008 WL 508463, at *1 (D.S.C.

Feb. 21, 2008) also challenged the prayer policy at SLRDC that prevented him from praying in the common rooms. The court found that "the regulation has a valid, rational connection to a legitimate government interest" because the intent of the policy is to maintain order within the institution, Plaintiff had an alternative means of exercising his right by praying in his cell, and "the potential impact to the guards, other inmates, and allocation of prison resources generally if accommodation of Plaintiff's asserted right was made would threaten the safety of the correctional officers, institutional staff, and other inmates.. Id. at *2. For the same reasons here, Plaintiff's First Amendment Claim arising out of the SLRDC's prayer restrictions is without merit.

### 2. Equal Protection

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) To succeed on an equal protection claim under the Fourteenth Amendment, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001).

Plaintiff appears to allege that his equal protection rights were violated when he was not given a copy of the Quran or allowed to pray in common areas when inmates of other religions were given their holy texts and allowed to pray. The record demonstrates that inmates are permitted to keep their own copy of a Quran or Bible in their possession. McGhaney Aff. ¶ 14. Qurans and Bibles are available in the canteen for inmates to purchase and in the pod libraries for them to use. Major Aff. ¶ 6. Inmates are instructed to advise the staff if these materials are not available in the libraries

or the canteen so that more can be ordered. McGhaney Aff. ¶ 13. Finally, inmates may receive religious materials including Qurans or Bibles from prison ministry volunteers when they are available. McGhaney Aff. ¶ 14. Inmates may occasionally receive donated religious materials provided to SLRDC. Ray Lee Aff. ¶ 25. Staff members can only distribute what is donated, which is most often from churches or other Christian organizations. Ray Lee Aff. ¶ 25.

Plaintiff filed a request form on July 1, 2014 requesting that certain religious materials be provided for him. Ray Lee Aff. ¶ 20. As an accommodation, Captain Ray Lee responded to this request and informed Plaintiff that he could obtain a Quran from the canteen and that he would be permitted to have an extra towel for the purpose of using it as a prayer rug, but he had to use it in his cell. Id. Thereafter, on August 22, 2014, Plaintiff was issued a Quran from the facility library. Aff. of McGhaney, ¶ 13.

SLRDC's prayer policy applies to individual prayers and to group prayers, and applies to all religions equally. Gailliard Aff. ¶¶ 14, 16. Defendants Dillard and Oakes attest that they applied SLRDC's policy prohibiting prayers without regard to the particular religion of an inmate. Oakes Aff. ¶ 4, Dillard Aff. ¶ 5. When Defendant Merriweather observed a group of Christian inmates praying in the common area of the pod, she asked them to cease and sought to verify the correct application of the policy with Major McGhaney. Merriweather Aff. ¶ 6. Consistent with Plaintiff's allegations, Defendant McGhaney reiterated that all inmates would abide by SLRDC's policy limiting prayers to inmates' cells. Complaint pg. 9. On one occasion, Plaintiff was found praying on a rug in front of a fire exit. Dillard Aff. ¶ 4. Plaintiff was reminded of the rule and asked to pray within his cell. Id. Officer Dillard also attests to having enforced this policy as to other groups of inmates as well. Id. ¶ 5. When inmates are observed praying in groups Defendants report asking them to refrain and directing the inmate to the rules requiring prayers be conducted in the inmate's cell.

Oakes Aff. ¶ 5. In practice, officers are not generally monitoring the content of inmates' conversations in the common areas of the facility and conduct that does not cause disturbances or obstruct movement may not come to the attention of officers. Gailliard Aff. ¶ 13. Therefore, it is entirely plausible that individuals or groups engage in this conduct without being observed by SLRDC staff.

Plaintiff also alleges that he alone was provided recreation in thirty-minute intervals, while other inmates were allowed one hour of recreation time. However, this policy was in effect for the entire B-Pod population for the time period complained of. Streater Aff. ¶ 4, Sweat Aff. ¶ 5, Reddick Aff. ¶ 5, Vaughn Aff. ¶ 4, McFadden Aff. ¶ 3, Moore Aff. ¶ 4. Likewise, all B-Pod inmates shared in receiving recreation times afterhours. Vaughn Aff. ¶ 5, McFadden Aff. ¶ 4. The equal protection requirement "does not take from the States all power of classification," Personnel Adm'r v. Feeney, 442 U.S. 256, 271, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Therefore, to the extent Plaintiff alleges that he was treated differently from inmates in the general population, his claim fails because those inmates are not similarly situated to him.

Finally, Plaintiff complained that he was denied access to his prescribed glasses because they had metal frames even though other inmates had glasses with metal frames. The record reveals that Plaintiff filed a grievance form on June 29, 2014, stating that his family had attempted to drop-off metal-framed eyeglasses for his use but they were denied due to security concerns. Aff. of Ray Lee, ¶ 18. The reason the glasses were denied initially was because Plaintiff had not advised the staff that he needed prescription glasses. Id. Once he followed the proper procedure and filed a grievance advising the staff he needed prescription glasses, he received eyeglasses on July 7, 2014. Id.

With each of these issues raised by Plaintiff, he fails to present evidence sufficient to show that he was treated differently from similarly situated individuals or that any unequal treatment was the result of intentional discrimination. Therefore, his equal protection claims fail.

### 3.     Due Process

Plaintiff appears to allege that his due process rights were violated when he was assigned to SMU after complaining of comments made to him by Officer Patton. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393, 162 L. Ed. 2d 174 (2005). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.E.2d 447 (1979). The Bell Court further noted, "'[c]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.'" Id. at 546-547 (citations omitted). Correctional institutions are to be afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547 (citations omitted). Not every hardship suffered during pretrial detention rises to the level of "punishment" in the constitutional sense. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Bell, 441 U.S. at 535). In order for Plaintiff to prevail on his due process claim, he must prove that his assignment to protective custody constituted constitutionally impermissible punishment and must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate non-punitive governmental objective, from which a punitive intent may be inferred. Id. (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).

This Court has recognized that the separation of a pre-trial detainee may serve any number of the following legitimate interests – "to protect an inmate's safety, to protect other inmates from a particular inmate, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer." Phomphackdi v. Spartanburg County, C/A No. 9:053084-DCN-GCK, 2006 WL 4391127, at *8–9 (D.S.C. Nov. 20, 2006).

Plaintiff's protective custody assignment arose out of an incident in which he alleged sexual harassment by Officer Patton.  Plaintiff alleges that Officer Patton made inappropriate comments to him on August 2, 2014, by saying that he "had a big a** like one of her homeboys especially when I bent over doing whatever I be doing in my cube … that he was a gay dancer and they call him J.B. for juicy booty."[2]  Complaint p. 10.  The record reveals that Plaintiff submitted a grievance on August 4, 2014. McMillan Aff. Ex. B, p. 2.  Plaintiff informed Officer Dillard of the same incident and Dillard informed Plaintiff that "per facility directive no repercussions would made against him for telling his side of the story." McMillan Aff. Ex. A, p. 2. Plaintiff also utilized SLRDC's Prison Rape Elimination Act (PREA) "hotline" and reported the incident. Aff. of McMillan, Ex. A, pg. 5.

As the PREA coordinator, Lieutenant McMillan ensured that the investigation was handled according to policy. McMillan Aff. Ex. A, pp. 2-8. This process included notification to local law enforcement, taking a sworn statement from Plaintiff, and complying with South Carolina Department of Corrections (SCDC) reporting procedures. Id.  During the investigation, Officer Patton was reassigned from the E-Pod housing area to prevent any interactions between her and Plaintiff. McGhaney Aff. ¶ 16. The Sumter County Sheriff's Office determined that it an in-house

---

[2] If Plaintiff is attempting to allege a constitutional claim for these alleged comments, his claims must fail. Allegations by an inmate of verbal threats and harassment, even if true, do not constitute the violation of any federally protected right. Merriweather v. Reynolds, 586 F.Supp.2d 548, 557 (D.S.C. 2008). See also Morrison v. Martin, 755 F.Supp. 683, 687 (E.D.N.C.1990), aff'd 917 F.2d 1302 (4th Cir. 1990).

matter rather than a criminal matter and closed the case within its office. McMillan Aff. Ex. A, p. 8. The investigation conducted within SLRDC determined that the allegations were unfounded. Gailliard Aff. ¶ 19; McMillan Aff. ¶ 6; McGhaney Aff. ¶ 17.

Plaintiff was not placed in protective custody as a result of his allegations against Officer Patton, but because he expressed to staff members that he feared that she would retaliate. Ray Lee Aff. ¶ 23. Upon completion of the investigation, Patton was reassigned back to E-Pod, where Plaintiff was housed. Thereafter, Plaintiff informed staff members that he was in fear of retaliation[3] from Officer Patton regarding his allegations against her. Ray Lee Aff. ¶ 23, McMillan Aff. ¶ 10. Plaintiff was immediately transferred to protective custody to prevent any interaction between he and Defendant Patton. McGhaney Aff. ¶ 21. This assignment was neither punitive nor disciplinary in nature. McGhaney Aff. ¶ 21. Plaintiff fails to present any evidence to the contrary. Therefore, summary judgment is appropriate on his due process claim.

    **4.    Access to Courts**

Plaintiff alleges that he did not have access to adequate legal research materials nor did he have sufficient supplies such as paper, pens and envelopes. Inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This means that inmates must be given "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (citing Bounds, 430 U.S. at 825). To state a claim for violation of the right to access to the court, an inmate must show some interference with this right or some deficiency

---

[3]In his complaint, Plaintiff stated that he was "angry, disrespected, and embarrassed about what she had said … and [that he] felt uncomfortable with Officer Patton being placed back in a position over [his] person because … the Officer could retaliate against [him] at any time for … making a report against her …." Complaint p. 10.

in the legal resources available, as well as evidence of an actual injury or a specific harm related to litigation. Id. at 349; Lewis v. Casey, 518 U.S. 343, 349–52, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (holding that to state a claim for denial of meaningful access to the courts an inmate must allege specific injury resulting from the alleged denial). A prisoner must allege adverse consequence as a basis for a claim that the defendant's actions deprived him of meaningful access to the courts. White v. White, 886 F.2d 721 (4th Cir.1989); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996) (holding that the complaint must contain specific allegations as to the actual injury sustained); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir.1993). Actual injury must be more than theoretical deficiencies; rather, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis, 518 U.S. at 349. Plaintiff has made no such allegation. Therefore, this claim fails as well.

### 5.     Conditions of Confinement

Plaintiff complains that he was served apples, applesauce, and cheese even though he informed the medical staff during intake that he was allergic to dairy products and apples. As a pretrial detainee, Plaintiff's conditions of confinement claims are analyzed through the Due Process clause of the Fourteenth Amendment. Bell, 441 U.S. at 537. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." Id. To state a case that prison conditions violate constitutional requirements, a plaintiff must show both "(1) a serious deprivation of a basic human need and (2) deliberate indifference to prison conditions on the part of prison officials."

Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991) (internal citations omitted).[4] It is Plaintiff's burden to establish that "the deprivation of [a] basic human need was objectively 'sufficiently serious,'" and that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (citations omitted).

With respect to meals, the Fourth Circuit has held, "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it.'" Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (internal citations omitted). Plaintiff's allergy is recorded in the Inmate Special Meal Code log maintained by SLRDC and this record is used by the SLRDC staff to provide meals consistent with inmate's particular needs. Gailliard Aff. ¶ 8. While every effort is made to provide trays consistent with an inmate's allergy restrictions, mistakes can occur. On these occasions, officers provide substitutions. Id. ¶ 9. If Plaintiff brought such an error to staff-members attention, appropriate substitutions were made. Sweat Aff. ¶ 6, Moore Aff. ¶ 7, McFadden Aff. ¶ 7. When Plaintiff grieved this issue, he was advised not to eat foods to which he was allergic. Kelley Aff. ¶ 3. Plaintiff fails to present evidence sufficient to show that he suffered a sufficiently serious deprivation of a basic human need or that the officials acted with a sufficiently culpable state of mind. Therefore, this claim fails as well.

In sum, Plaintiff fails to present sufficient evidence to create a dispute of material fact as to any of the allegations raised in his complaint. Therefore, summary judgment is appropriate on the merits.

---

[4] The standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. Hill, 979 F.2d at 991; Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988).

## IV.     CONCLUSION

For the reasons discussed above, it is recommended that this case be dismissed pursuant to Fed.R.Civ.P. 41(b) for Plaintiff's failure to prosecute his claims. In the alternative, it is recommended that Defendants' Motion for Summary Judgment (Document # 70) be granted on the merits and this case be dismissed in its entirety.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

October 30, 2015<br>
Florence, South Carolina

**The parties are directed to the important information on the following page.**